# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

ROBERT CARRADINE,

              Plaintiff,

v.

RACINE POLICE DEPARTMENT,
CALEDONIA POLICE DEPARTMENT,
and RACINE SHERIFF'S OFFICE,

              Defendants.

Case No. 24-CV-861-JPS

**ORDER**

## 1.    INTRODUCTION

Plaintiff Robert Carradine ("Plaintiff") proceeds pro se in this action, alleging violations of his constitutional rights. ECF No. 1. He also moved for leave to proceed without prepaying the filing fee. ECF No. 2. The Court previously screened Plaintiff's complaint and, "finding that it present[ed] significant pleading deficiencies, grant[ed] Plaintiff leave to file an amended complaint that corrects those deficiencies" and deferred ruling on the motion for leave to proceed without prepaying of the filing fee. ECF No. 5 at 1. Plaintiff filed an amended complaint, ECF No. 6, which the Court now screens. As stated herein, Plaintiff will be permitted to proceed on Fourth Amendment, Equal Protection, and state law claims against Defendants Racine Police Officer John Doe 1, Caledonia Police Officer John Doe 2, and Officer with Badge Number DA1263.[1]

---

[1] Plaintiff did not name these individuals in the caption of his amended complaint, ECF No. 6 at 1, but as explained below, his claims proceed against them in substance, so they will be added to the docket, and to the case caption in future orders. Further, the Court finds that there is no basis to permit any claims to proceed against the municipal entities that Plaintiff names in the caption of his amended complaint, so these entities will be terminated from the docket. Finally,

## 2.   MOTION TO PROCEED IN FORMA PAUPERIS

A party proceeding pro se may submit to the court a request to proceed without prepaying the otherwise required filing fees, otherwise known as a motion to proceed in forma pauperis.[2] "The federal in forma pauperis statute, 28 U.S.C. § 1915, is designed to ensure indigent litigants have meaningful access to the federal courts while at the same time prevent indigent litigants from filing frivolous, malicious, or repetitive lawsuits." *Rodriguez v. Crim. Just. Facility Safety Bldg.*, No. 23-CV-394, 2023 WL 3467565, at *1 (E.D. Wis. Apr. 7, 2023) (citing *Nietzke v. Williams*, 490 U.S. 319, 324 (1989)), *report and recommendation adopted sub nom. Rodriguez v. Crim. Just. Facility*, No. 23-CV-394-PP, 2023 WL 3467507 (E.D. Wis. May 15, 2023).

To determine whether it may authorize a litigant to proceed in forma pauperis, the Court engages in a two-part inquiry. It must examine whether the litigant is able to pay the costs of commencing the action. 28 U.S.C. § 1915(a). The Court must also examine whether the action "is frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief"; if any of these criteria applies, the Court "shall dismiss the case." 28 U.S.C. § 1915(e)(2)(B)(i)–(iii). Likewise, "[i]f the court determines at any time that

---

the Racine and Caledonia police chiefs will be named as defendants for the limited purpose of identifying the John Doe defendants against whom this action proceeds.

[2]Although 28 U.S.C. § 1915(a) specifically references "prisoner" litigants, it has been interpreted as providing authority for such requests by both prisoner and non-prisoner pro se litigants alike. *Floyd v. U.S. Postal Serv.*, 105 F.3d 274, 275–76 (6th Cir. 1997) (superseded by rule on other, inapplicable grounds); *see also Mitchell v. Farcass,* 112 F.3d 1483, 1491 n.1 (11th Cir. 1997) ("Section 1915(e) applies to all [in forma pauperis] litigants—prisoners who pay fees on an installment basis, prisoners who pay nothing, and nonprisoners in both categories.") (Lay, J., concurring).

it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

It follows that a litigant whose complaint does not meet the criteria in 28 U.S.C. § 1915(e)(2) or does not plead claims within the Court's subject matter jurisdiction, and whose case cannot proceed as a result, necessarily cannot reap the benefits of proceeding in forma pauperis. In other words, although in forma pauperis status ought to be granted to those impoverished litigants "who, within the District Court's sound discretion, would remain without legal remedy if such privilege were not afforded to them," *Brewster v. N. Am. Van Lines, Inc*. 461, F.2d 649, 651 (7th Cir. 1972), a pro se litigant's financial status is only part of the picture in determining whether the litigant's case may proceed without payment of the filing fee.

The Court finds that Plaintiff is unable to pay the costs of commencing the action. 28 U.S.C. § 1915(a). He represents under oath that he has no income because he is disabled and his Social Security benefits were "cut off." ECF No. 2 at 3. He is unemployed and unmarried, and he lists three dependents for whom he pays a total of $187 per month in alimony or child support. *Id.* He is responsible for $1,500 in monthly expenses besides alimony or child support. *Id*. He has no assets. *Id.* at 2.

Based on these representations, the Court is satisfied that he is indigent. For the reasons stated below, the Court also finds that Plaintiff's complaint clears the 28 U.S.C. § 1915(e)(2) threshold and survives screening. Accordingly, the Court grants Plaintiff's motion for leave to proceed without prepayment of the filing fee. ECF No. 2.

3.     **SCREENING THE COMPLAINT**

3.1     **Legal Standard**

As noted above, when a pro se litigant seeks to proceed in forma pauperis, the Court must screen the litigant's complaint prior to service on

defendants. The Court "shall dismiss the case" if it finds any of the following: the action is frivolous or malicious, the complaint fails to state a claim upon which relief may be granted, or the complaint seeks monetary relief against a defendant who is immune from such relief, 28 U.S.C. § 1915(e)(2); or the case is outside of the Court's subject matter jurisdiction, Fed. R. Civ. P. 12(h).

A claim is legally frivolous when it "lacks an arguable basis either in law or in fact." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992) (quoting *Neitzke*, 490 U.S. at 325); *see also Hutchinson ex rel. Baker v. Spink*, 126 F.3d 895, 900 (7th Cir. 1997) (quoting *Neitzke*, 490 U.S. at 325). The Court may dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327.

To state a claim, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint must give "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

In reviewing the complaint, the Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Kubiak*, 810 F.3d at 480–81 (citing *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008)). However, the Court "need

Case 2:24-cv-00861-JPS    Filed 09/04/24    Page 4 of 26    Document 7

not accept as true 'legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (quoting *Ashcroft*, 556 U.S. at 678) (internal bracketing omitted). A court is obligated to give pro se litigants' allegations a liberal construction. *Kelsay v. Milwaukee Area Tech. Coll.*, 825 F. Supp. 215, 217 (E.D. Wis. 1993) (citing *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972)). Pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

### 3.2    Plaintiff's Factual Allegations

Plaintiff avers that he is a licensed hemp cultivator with a valid hemp license from the United States Department of Agriculture ("USDA"). ECF No. 6 at 2. On April 26, 2024, Plaintiff made an "inquiry about hemp cultivation laws in Wisconsin" apparently to the Caledonia and/or Racine Police Departments. *Id.* Three officers from these two police departments responded to the inquiry and came to Plaintiff's home. *Id.* Plaintiff identifies the officers who arrived at his home as Racine Police Officer John Doe 1, Caledonia Police Officer John Doe 2, and Officer with Badge Number DA1263. *Id.* at 2–3. For reasons explained *infra* Section 3.3, these three officers will be referred to collectively in this Order as the "Defendant Officers."

Plaintiff states that, during this encounter with law enforcement, he was "peacefully protesting the classification of cannabis and hemp as the same plant species and the inconsistent enforcement [of cannabis or hemp laws] by law enforcement." *Id.* at 2.[3] Plaintiff, "while holding his USDA hemp license[,] attempted to engage in a dialogue about the legality of

---

[3]Plaintiff contends that such classification and inconsistent enforcement is an Equal Protection violation for "Wisconsinites." ECF No. 6 at 2.

hemp cultivation" with the officers. *Id.* Plaintiff asked Racine Police Officer John Doe 1 and Caledonia Police Officer John Doe 2 if they had heard of hemp and asked Racine Police Officer John Doe 1 if cannabis was illegal in Wisconsin. *Id.* Racine Police Officer John Doe 1 "refused to answer"; Plaintiff then stated that he was "asking for legal clarification" and that the officers were supposed to "tell [him] if [he] was breaking the law." *Id.*

The situation escalated. Caledonia Police Officer John Doe 2 "told [Plaintiff] to step back." *Id.* Plaintiff, who was standing in his own yard and on his own property, moved outside of Caledonia Police Officer John Doe 2's reach, but the officer "continued to yell" at Plaintiff. *Id.* Caledonia Police Officer John Doe 2 eventually "grabbed and twisted [Plaintiff's] arm painfully, causing injury," and handcuffed Plaintiff. *Id.* Racine Police Officer John Doe 1 then grabbed Plaintiff's other arm and "said [Plaintiff] was being detained until they figured out why they were called." *Id.* Caledonia Police Officer John Doe 2 "claim[ed] [Plaintiff] was being detained for not stepping back" when the officer told Plaintiff to do so, and for "stepping up in [the officer's] face." *Id.*

Plaintiff continued to ask why he was being detained and "what crime [he] had committed," and to "peaceful[ly] protest" his detention, including by asking the officers, perhaps facetiously, if he was a "slave." *Id.* Racine Police Officer John Doe 1 repeated that Plaintiff was being detained for not stepping back when commanded to do so, and additionally stated that Plaintiff was "causing a disturbance" even though there were no other people around and Plaintiff was at his own home. *Id.* Officer with Badge Number DA1263[4] then said Plaintiff had been detained for misrepresenting that he had a marijuana license—an allegation that Plaintiff disputes, saying

---

[4]Plaintiff does not state which municipality this officer was from.

that he "never . . . claim[ed] . . . that [he] had a marijuana license," only his USDA license. *Id.* at 3.

Plaintiff states that he was acting "peacefully" and showed "compliance" throughout the encounter. *Id.* at 2, 3. Plaintiff states that the "unjust and discriminatory" treatment he alleges was driven at least in part "by a personal vendetta" that Caledonia Police Officer John Doe 2 held against Plaintiff. *Id.* at 3; *id.* at 4 ("Contextual Background"). As evidence of this "vendetta," Plaintiff states that Caledonia Police Officer John Doe 2's son previously "used a racial slur and spat in [Plaintiff's] face" in middle school. *Id.* at 3.

Plaintiff was then transported in a "paddy wagon" to Racine County Jail, with at least one other officer, Racine County Sheriff Officer John Doe 3, involved in the transport. *Id.* at 3. He was handcuffed to the police vehicle bench while in transit. *Id.* Apparently during the transport, Caledonia Police Officer John Doe 2 told Plaintiff that there was a call "from the neighborhood" about him yelling, and that this call was "why [Plaintiff] was arrested." *Id.* Plaintiff again states that he was yelling in "peaceful protest" and therefore was not doing anything wrong by yelling in protest of his detention. *Id.*

At the Racine County Jail, Racine County Sheriff Officer John Doe 4 forced Plaintiff to take off his clothes and "grabbed [Plaintiff's] left arm and twisted and bent [his] wrist." *Id.* Plaintiff was forced by an officer[5] to lay prone and motionless on the floor of his detention cell and was threatened

_____

[5]Plaintiff states that "[d]ue to [his] inability to see," he could not identify which officer did this. ECF No. 6 at 3. He later states that he has "impaired vision." *Id.* This is the first time that Plaintiff suggests that he has a visual impairment; it is unclear how he identified the three officers who came to his home on April 26, 2024.

that he would be tased if he moved. *Id.* Unknown officers also "forced [him] to drink PFAS-contaminated water while being told it contained no contaminants" and called him racial slurs. *Id.* He was told that he would be placed back in the cell if he "didn't provide [his] signature," but Plaintiff does not state what document he was apparently forced to sign. *Id.*

Plaintiff does not state for how long he was detained at the Racine County Jail or when he was released, but it appears that he was eventually released because he is not currently confined. Plaintiff does not state whether he was ever charged with any crime or civil offense based on the foregoing interaction with police, or whether he was ever taken before a state court judge for a probable cause hearing, but a check of state court records reveals no pending cases against Plaintiff.[6]

Plaintiff states that he proceeds under the Fourth and Fourteenth Amendments' protections against unlawful search and seizure and excessive force and guarantees of equal protection and due process. *Id.* He further states that the Defendant Officers and others violated his "right to peaceful protest" through the allegedly unlawful detention and excessive force, as well as by "restricting access to public areas where [he] intended to protest[] without providing alternative locations," "prohibit[ing] media coverage," "engag[ing] in intimidation or harassment," and "allowing protests by certain groups" while restricting Plaintiff's protest. *Id.* at 4. He also raises state law claims for assault, battery, false imprisonment,

---

[6]The Court may take judicial notice of public records, including state court records. *See Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994). Plaintiff sued the City and County of Racine in April 2024. *See Robert Carradine v. City of Racine et al.*, Racine County Circuit Court Case No. 2024CV000584, *available at* https://wcca.wicourts.gov/caseDetail.html?caseNo=2024CV000584&countyNo=51 &index=0 (last visited Sept. 4, 2024). It is unclear if that case arose from the same facts that Plaintiff has alleged in this case. In any event, it is now dismissed. *Id.*, Aug. 6, 2024 docket entry.

intentional infliction of emotional distress, negligence, and kidnapping. *Id.* For relief, he seeks $20 million in compensatory damages, as well as punitive damages. *Id.* at 5.

### 3.3 Analysis

Although Plaintiff lists only a single count for a "violation of [his] civil rights under 42 U.S.C. § 1983," as well as a single count for "state law claims," ECF No. 6 at 3–4, the amended complaint attempts to raise a wider array of claims. The Court understands the amended complaint as attempting to raise each of the following claims:

- A Fourth Amendment claim for unlawful seizure or arrest;
- A Fourth Amendment claim of excessive force during Plaintiff's seizure/arrest;
- A Fourth Amendment claim for forced disrobing during his detention at Racine County Jail before being released;
- A Fourteenth Amendment claim for being forced to drink "contaminated water" during his detention;[7]
- A Fourteenth Amendment "class of one" Equal Protection claim;
- A First Amendment claim of interference with protest; and
- State law claims for assault, battery, false imprisonment, intentional infliction of emotional distress, negligence, and kidnapping.

The Court therefore examines each of these potential claims and determines whether Plaintiff may proceed on them.

As a threshold matter, the Court clarifies which defendants are properly named and against whom this matter will proceed. The Court

---

[7] In screening the original complaint, the Court incorrectly characterized a claim that Plaintiff was deprived of water during pretrial detention as proceeding under the Fourth Amendment. ECF No. 5 at 7. The Fourteenth Amendment is the proper legal basis for a claim on these or similar facts. *Hardeman v. Curran*, 933 F.3d 816, 821–822 (7th Cir. 2019) (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015)).

previously instructed Plaintiff to "identify, and name as defendants, the officers who were involved in allegedly violating his rights." ECF No. 5 at 9. Consistent with the Court's instruction, Plaintiff makes allegations in the body of the amended complaint against the Defendant Officers and other officers whose identities are unknown. *Id.*; *see generally* ECF No. 6. As the Court explains below, various of his claims against Racine Police Officer John Doe 1, Caledonia Police Officer John Doe 2, and Officer with Badge Number DA1263 may proceed in this lawsuit. The Court provides instructions at the end of this Order for determining the identities of the Defendant Officers.

The Court also previously informed Plaintiff that municipal entities were only appropriate defendants if he "ma[d]e allegations in the amended complaint demonstrating what municipal custom or policy caused the constitutional violations he alleges." *Id.* at 9–10 (citing *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978)). Plaintiff has maintained in the caption of his amended complaint that his suit proceeds against the Racine Police Department, the Caledonia Police Department, and the Racine Sheriff's Office. ECF No. 6 at 1. But he makes no allegations in the amended complaint that Racine Police Officer John Doe 1, Caledonia Police Officer John Doe 2, or Officer with Badge Number DA1263 (or any of the other officers he references) were acting pursuant to any of those municipal entities' policies or customs when they allegedly violated his rights. *See generally id.* The Court sees no potential *Monell* claim in the amended complaint and accordingly will direct the Clerk of Court to terminate the Racine Police Department, the Caledonia Police Department, and the Racine Sheriff's Office as parties.

### 3.3.1 Unlawful Seizure/Arrest

Plaintiff states that the Defendant Officers seized or arrested him on April 26, 2024 and gave varying reasons for doing so: for "not stepping back" when ordered to do so or for being too close to an officer; for "causing a disturbance"; and for "misrepresenting that he had a marijuana license." ECF No. 6 at 2–3. Plaintiff believes that it was unlawful for the Defendant Officers to seize or arrest him based on these reasons—in other words, that their asserted reasons were legally insufficient to support seizing or arresting him.

"A person is seized by authorities when a reasonable innocent person would not feel free to leave." *Molina v. Latronico*, 430 F. Supp. 3d 420, 434 (N.D. Ill. 2019) (citing *United States v. Drayton*, 536 U.S. 194, 200–02 (2002)); *see also Bentz v. City of Kendallville*, 577 F.3d 776, 779 (7th Cir. 2009) ("We have also referred to a seizure for Fourth Amendment purposes as 'an intentional limitation of a person's freedom of movement.'" (quoting *Bielanski v. County of Kane*, 550 F.3d 632, 637 (7th Cir. 2008))). Meanwhile, "[a]n unlawful arrest occurs when a person is seized by police without probable cause." *Hardrick v. City of Bolingbrook*, 522 F.3d 758, 762 (7th Cir. 2008) (quoting *A.M. v. Butler*, 360 F.3d 787, 798 (7th Cir. 2004) and citing *Jenkins v. Keating*, 147 F.3d 577, 583 (7th Cir. 1998)). An arrest is just "one flavor of seizure; a seizure ripens into 'an arrest when a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest.'" *Molina*, 430 F. Supp. 3d at 434 (quoting *United States v. Ienco*, 182 F.3d 517, 523 (7th Cir. 1999)).

While "[a]rrests must be supported by probable cause, . . . lesser seizures need only be supported by reasonable suspicion." *Molina*, 430 F. Supp. 3d at 434 (citing *United States v. Lopez*, 907 F.3d 472, 478 (7th Cir.

2018)). Officers generally have probable cause for an arrest where they know about facts and circumstances that would allow a reasonable police officer to suspect that a crime had been committed, is being committed, or is about to be committed. *See Rooni v. Biser*, 742 F.3d 737, 740 (7th Cir. 2014).

It is not yet clear whether the Defendant Officers seized or arrested Plaintiff. The distinction is a question of fact, and it matters because the legal basis required to seize Plaintiff changes depending on the nature of the seizure. But in any event, Plaintiff is alleging that the Defendant Officers either seized him without reasonable suspicion or arrested him without probable cause at his home on April 26, 2024. These allegations are sufficient to permit Plaintiff to proceed on a Fourth Amendment claim of unlawful seizure or arrest against the Defendant Officers.

### 3.3.2 Excessive Force During Seizure/Arrest

Plaintiff states that Racine Police Officer John Doe 1 and Caledonia Police Officer John Doe 2 grabbed and/or twisted his arms and caused him injury when they seized or arrested him at his home on April 26, 2024. ECF No. 6 at 2. He notes repeatedly that he was being peaceful and compliant during the April 26, 2024 encounter.

"Under the Fourth Amendment, a police officer's use of force in arresting a suspect violates the Constitution if, judging from the totality of the circumstances at the time of arrest, the officer used greater force than was reasonably necessary to make the arrest." *Lester v. City of Chicago*, 830 F.2d 706, 713 (7th Cir. 1987). "Significant force may not be used on nonresisting or passively resisting suspects." *Green v. Chavala*, 567 F. App'x 458, 461 (7th Cir. 2014) (citing *Abbott v. Sangamon County*, 705 F.3d 706, 732 (7th Cir. 2013)).

Plaintiff's allegations are sufficient to support a Fourth Amendment claim of excessive force against Racine Police Officer John Doe 1 and

Caledonia Police Officer John Doe 2. Plaintiff has not alleged that Officer with Badge Number DA1263 used any type of force, so this claim does not proceed against him.

### 3.3.3 Fourth and Fourteenth Amendment Claims Related to Detention at Racine County Jail

Plaintiff alleges that he was forced to disrobe and drink "contaminated water" while he was detained pretrial (or more accurately, pre-release) in the Racine County Jail. ECF No. 6 at 2–3.[8] These claims essentially challenge Plaintiff's conditions of confinement. As the Court previously explained with respect to identical claims in Plaintiff's original complaint,

> [i]t appears that Plaintiff has improperly joined "[u]nrelated claims against different defendants" by raising in the same lawsuit allegations related to his seizure by law enforcement and to the conditions of his confinement. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). . . . While "multiple claims against a single party are fine, . . . Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." *Id.*; *see also, e.g.*, *Strominger v. Brock*, 592 F. App'x 508, 512 (7th Cir. 2014) . . .
>
> Plaintiff's complaint does not explain how his seizure by Racine and Caledonia police officers relates to the alleged constitutional violations he experienced while confined pursuant to that seizure. Having been in jail pursuant to an

---

[8]The Court will not construe the amended complaint as supporting a standalone "unlawful detention" claim related to Plaintiff's time in Racine County Jail. This type of claim is typically used to challenge detention that continues after a probable cause hearing before a judge despite the material used to support the probable cause finding being fabricated. *See, e.g.*, *Manuel v. City of Joliet*, 580 U.S. 357, 367 (2017) (noting that a Fourth Amendment violation "can occur when . . . a judge's probable-cause determination is predicated solely on a police officer's false statements."); *Lewis v. City of Chicago*, 914 F.3d 472, 479 (7th Cir. 2019) ("[T]he constitutional right in question is the 'right not to be held in custody without probable cause . . . .'" (quoting *Manuel v. City of Joliet*, 903 F.3d 667, 670 (7th Cir. 2018))). Plaintiff has not alleged facts that would support such a claim.

allegedly unlawful arrest when the conditions of confinement claims occurred does not adequately link the two distinct sets of facts. Something more is required to demonstrate a connection—for example, the participation of common officers, or other common facts. If Plaintiff cannot demonstrate a factual connection between his arrest-related claims and his confinement-related claims, then those claims cannot proceed together in a single lawsuit.

ECF No. 6 at 7–8. The Court permitted Plaintiff to amend his complaint, in part, to give him an opportunity to "**omit**[] one set of facts and claims (either his Fourth Amendment [seizure- or] arrest-related claims, or his . . . confinement-related claims)," noting that "[i]f Plaintiff files an amended complaint omitting one of the sets of facts and claims, those omitted claims will stand dismissed without prejudice." *Id.* at 8.

Plaintiff did not follow this instruction. The amended complaint does not allege any common facts between Plaintiff's seizure- or arrest-related claims and his confinement-related claims beyond the fact that Plaintiff was "in jail pursuant to an allegedly unlawful arrest when the conditions of confinement claims occurred." *Id.* But as the Court already pointed out, this is not sufficient to permit the claims to proceed together in a single suit. *Id.*

Plaintiff seems to allege "the participation of [one] common officer[]," *id.*, by saying that Caledonia Police Officer John Doe 2, who was involved in his seizure/arrest at his home, was also present when Plaintiff was transported to the Racine County Jail. ECF No. 6 at 3. But this is not enough to establish a factual connection between the two sets of claims, because Plaintiff states only that Caledonia Police Officer John Doe 2 told him certain information about the possible basis for his seizure/arrest at this time. Plaintiff does not allege that Caledonia Police Officer John Doe 2 was involved in violating Plaintiff's constitutional rights during transport or

detention. What Caledonia Police Officer John Doe 2 told Plaintiff about the seizure/arrest might be *evidence of* a possible constitutional violation at the time of the seizure/arrest, but telling Plaintiff this information is not *in itself* a constitutional violation.

Joinder of multiple defendants into one action is proper only if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). The court finds that the complaint violates Rule 20 insofar as it advances distinct claims against multiple defendants. Accordingly, Plaintiff's Fourth Amendment claim that he was subject to forced disrobing and his Fourteenth Amendment claim that he was forced to drink "contaminated water" during pretrial detention cannot proceed in this lawsuit and will be dismissed without prejudice. The Court takes no position on whether these claims are sufficient to survive screening. By the same token, the officers that Plaintiff says were involved in these claims—Racine County Sheriff Officers John Does 3 and 4 and the unknown officers present during Plaintiff's detention at the Racine County Jail—will not be listed as defendants in this case.

### 3.3.4   Equal Protection Claim

Plaintiff believes that he was treated "unjust[ly]" and in a "discriminatory" manner during the alleged events. ECF No. 6 at 3. He does not clearly state whether he belongs to a protected class or was treated differently from individuals "similarly situated" to him, as the Court previously told him was necessary to state an Equal Protection claim. ECF No. 5 at 10 (citation omitted). However, Plaintiff does allege that Caledonia Police Officer John Doe 2 mistreated him at the time of the seizure/arrest

due to that officer's "personal vendetta" against Plaintiff. ECF No. 6 at 3–4. He also alleges throughout the amended complaint that he was seized/arrested despite being a "licensed hemp cultivator," suggesting that he believes he was lumped in with people who grow or produce drugs illegally and thus treated differently from people who are law-abiding. *Id.* at 2–3.

The Equal Protection Clause of the Fourteenth Amendment protects individuals from discrimination by the government on the basis of their membership in a particular class. *Geinosky v. City of Chicago*, 675 F.3d 743, 747 (7th Cir. 2012). Typically, the class is one of race, national origin, or sex. *Id.* (citing *Loving v. Virginia*, 388 U.S. 1, 8–12 (1967) and *United States v. Virginia*, 518 U.S. 515, 533–34 (1996)). However, the Equal Protection Clause also guards against governments "singling out just one person for different treatment for arbitrary and irrational purposes." *Id.* Known as "class of one" claims, these require proof that the plaintiff was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

If it is true that Caledonia Police Officer John Doe 2 treated Plaintiff differently than he treats other suspects/arrestees because of that officer's "personal vendetta" against Plaintiff rather than any legitimate law enforcement-related reason, that would be an example of such intentional disparate treatment. Similarly, if it is true that the Defendant Officers knew that Plaintiff legally cultivated hemp but treated him, without rational basis, as if he were engaging in illegal activity, that would be another example of intentional disparate treatment. The Court will therefore permit

Plaintiff to proceed at this time on a "class of one" claim against the Defendant Officers on these theories.[9]

### 3.3.5 First Amendment Claim

Plaintiff alleges that the officers' actions in allegedly unlawfully seizing or arresting him and subjecting him to excessive force, in addition to violating his rights under the Fourth Amendment, also operated to interfere with his "right to peaceful protest," ECF No. 6 at 4, which is protected by the First Amendment. *See* U.S. CONST. amend. I. To the extent that Plaintiff is attempting to proceed on a First Amendment claim, he will not be permitted to do so, as any such claim would proceed on the same facts as and would be unnecessarily duplicative of the Fourth Amendment unlawful arrest/seizure and excessive force claims. "Proceeding on different constitutional theories based on the same facts is redundant." *Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005) (dismissing additional claims based on same facts because the claim "gains nothing by attracting additional constitutional labels") (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)); *see also Huff v. Lott*, No. 3:21-CV-503-RLM-MGG, 2023 WL 2691602, at *2 (N.D. Ind. Mar. 29, 2023) (collecting cases).

---

[9]To the extent that Plaintiff contends that inconsistent enforcement of Wisconsin's marijuana/hemp laws is an Equal Protection issue for all "Wisconsinites," *see supra* note 3, he may not litigate such claims through this lawsuit. First of all, since it does not appear that he was charged with any civil or criminal offense related to the events of April 26, 2024, he likely does not have standing to bring such a challenge on his own behalf. And if he were subject to a state criminal or civil case related to how Wisconsin's marijuana/hemp laws apply to him, he would need to raise such a claim in *that* forum, not this federal lawsuit. Moreover, such a claim would have to be brought as a class claim, but Plaintiff—who proceeds pro se—is not permitted to litigate claims on anyone else's behalf but his own. *Elustra v. Mineo*, 595 F.3d 699, 704 (7th Cir. 2010) (citing 28 U.S.C. § 1654 and *Lewis v. Lenc-Smith Mfg. Co.*, 784 F.2d 829, 830–31 (7th Cir. 1986)).

The Court also observes that there is a dearth of facts in the amended complaint to support a standalone First Amendment claim, and indeed many facts that would contradict such a claim. For example, Plaintiff says the officers' behavior "blocked or restricted [his] access to public areas where [he] intended to protest," but he does not state that he was actually trying to access a public area. ECF No. 6 at 4. Instead, he repeatedly alleges that he was standing on his own property, *id.* at 2–3—an area that the law rigorously protects as *private* in the search-and-seizure context. *See Hawkins v. Mitchell*, 756 F.3d 983, 991–92 (7th Cir. 2014) ("[I]t is 'a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable.'" (quoting *Payton v. New York*, 445 U.S. 573, 586 (1980) (internal quotation marks omitted))). And he says that the officers "suppressed communication channels" he wished to use for protest and "allowed protests by certain groups while prohibiting" him from protesting, *id.* at 4, but he offers no details whatsoever to support such claims. For all these reasons, Plaintiff will not be permitted to proceed on a First Amendment claim based on the facts alleged in the amended complaint.

### 3.3.6 Assault and Battery

Under Wisconsin law, battery occurs if a defendant "intentionally caused bodily harm" to a plaintiff and the plaintiff "did not consent to the harm." Wis. Civil Jury Instruction 2005, *available at* [https://perma.cc/V6DJ-MMYR] (last visited Sept. 4, 2024). An assault occurs if a defendant "intended to cause physical harm" to the plaintiff and "acted to cause [the plaintiff] to reasonably believe [that the defendant] had the present intent and ability to harm" the plaintiff. Wis. Civil Jury Instruction 2004, *available at* [https://perma.cc/SG9X-7MUX] (last visited Sept. 4, 2024).

Plaintiff alleges that Caledonia Police Officer John Doe 2 "twisted [his] arm painfully" and that Racine Police Officer John Doe 1 "grabbed [his] other arm" when they seized/arrested Plaintiff. ECF No. 6 at 2. He later alleges that the officers involved in his seizure/arrest "committed intentional acts that resulted in physical harm or the threat of harm to [him]." *Id.* at 4. Although these latter allegations are vague and largely conclusory, the Court will permit Plaintiff to proceed on state-law assault and battery claims against Racine Police Officer John Doe 1 and Caledonia Police Officer John Doe 2. The Court may exercise supplemental jurisdiction over this state law claim since it is "so related" to the federal claims on which Plaintiff is permitted to proceed "that they form part of the same case or controversy." 28 U.S.C. § 1367(a).

Plaintiff does not assert that Officer with Badge Number DA1263 touched him without his consent or acted in a way that caused Plaintiff to believe that this officer intended to harm him. Therefore, as with the excessive force claim, Plaintiff's state law assault and battery claims do not proceed against Officer with Badge Number DA1263.

### 3.3.7    False Imprisonment

"Under Wisconsin law, '[f]alse imprisonment has been defined as the unlawful restraint by one person of the physical liberty of another.'" *Harris v. Milwaukee Police Dep't*, No. 17-CV-837-PP, 2018 U.S. Dist. LEXIS 146161, at *11–12 (E.D. Wis. Aug. 28, 2018) (quoting *Stern v. Thompson & Coates, Ltd.*, 517 N.W.2d 658, 666 (Wis. 1994) (internal quotation marks omitted)). Plaintiff's Fourth Amendment unlawful seizure/arrest claim does not necessarily preclude his assertion of this false imprisonment claim. *Selep v. City of Chicago,* 842 F. Supp. 1068, 1072 (N.D. Ill. 1993) (citing *Green v. Saenz*, 812 F. Supp. 798, 801 (N.D. Ill. 1992) (rejecting argument that false imprisonment claim should be dismissed as duplicative of false arrest

claim); *see also Bentz v. City of Kendallville*, 577 F.3d 776, 780 (7th Cir. 2009) (citing *Bielanski v. County of Kane*, 550 F.3d 632, 637 (7th Cir. 2008) and *Earles v. Perkins*, 788 N.E.2d 1260, 1265 (Ind. Ct. App. 2003)).

Plaintiff alleges that the officers involved in his seizure/arrest did not have a legitimate basis to restrain him, and accordingly may proceed on a state-law claim of false imprisonment against the Defendant Officers. As above, the Court will exercise supplemental jurisdiction over this claim under 28 U.S.C. § 1367(a).

### 3.3.8 Intentional Infliction of Emotional Distress

The elements of an intentional infliction of emotional distress claim are "(1) that the defendant's conduct was intentioned to cause emotional distress; (2) that the defendant's conduct was extreme and outrageous; (3) that the defendant's conduct was a cause-in-fact of the plaintiff's emotional distress; and (4) that the plaintiff suffered an extreme disabling emotional response to the defendant's conduct." *Rabideau v. City of Racine*, 675 N.W.2d 795, ¶ 33 (Wis. 2001) (citing *Alsteen v. Gehl*, 124 N.W.2d 312, 318 (Wis. 1963) and Wis. Civil Jury Instruction 2725).

Plaintiff alleges that the Defendant Officers "caused [him] severe emotional distress . . . through outrageous and extreme conduct." ECF No. 6 at 4. As with Plaintiff's assault and battery claims, although the allegations supporting such a claim are entirely conclusory, the Court will permit Plaintiff to proceed on state-law intentional infliction of emotional distress claims against the Defendant Officers. As above, the Court will exercise supplemental jurisdiction over this claim under 28 U.S.C. § 1367(a).

### 3.3.9 Negligence

Plaintiff alleges that the Defendant Officers "failed to exercise reasonable care, leading to harm or injury to [him]." *Id.* The Court understands Plaintiff to be taking issue with how Racine Police Officer John

Doe 1 and Caledonia Police Officer John Doe 2 physically handled him at the time of seizure/arrest. Plaintiff could possibly also be saying that the Defendant Officers were negligent in determining whether there was a lawful basis to seize/arrest him. Accordingly, Plaintiff will be permitted to proceed on claims that the Defendant Officers were negligent in seizing/arresting him without a lawful basis to do so and/or in how they physically handled him during his seizure or arrest. *See Markunas v. Village of Lake Delton,* 9 N.W.3d 308, ¶ 26–28 (Wis. Ct. App. May 2, 2024) (table) (analyzing claim of negligence against officers for injuring the plaintiff during a traffic stop). The Court will exercise supplemental jurisdiction over these claims. 28 U.S.C. § 1367(a). However, the Court notes that the officers are most likely immune from personal liability for this claim. *See Sheridan v. City of Janesville*, 474 N.W. 2d 799, 801 (Wis. Ct. App. 1991) (explaining public officer immunity under state law).

### 3.3.10 Kidnapping

Plaintiff alleges that the defendants "unlawfully confined or abducted" him. ECF No. 6 at 4. Such a claim is entirely duplicative of his other claims. Moreover, the Court has located no authority that affords Plaintiff a private, civil cause of action based on this theory. Rather, a kidnapping or abduction claim is charged by the state in a criminal prosecution. *See* Wis. Stat. §§ 940.31, 948.30. Plaintiff may not proceed on this claim.

### 4. CONCLUSION

In light of the foregoing, the Court finds that Plaintiff may proceed on the following claims against the following individual defendants pursuant to 28 U.S.C. § 1915A(b):[10]

---

[10]For clarity, the Court does not here abbreviate the group of officers as the Defendant Officers.

**Count One**: a Fourth Amendment claim of unlawful seizure or arrest against Racine Police Officer John Doe 1, Caledonia Police Officer John Doe 2, and Officer with Badge Number DA1263;

**Count Two**: a Fourth Amendment claim of excessive force against Racine Police Officer John Doe 1 and Caledonia Police Officer John Doe 2;

**Count Three**: an Equal Protection "class of one" claim against Racine Police Officer John Doe 1, Caledonia Police Officer John Doe 2, and Officer with Badge Number DA1263;

**Count Four**: state-law assault and battery claims against Racine Police Officer John Doe 1 and Caledonia Police Officer John Doe 2;

**Count Five**: a state-law false imprisonment claim against Racine Police Officer John Doe 1, Caledonia Police Officer John Doe 2, and Officer with Badge Number DA1263;

**Count Six**: a state-law intentional infliction of emotional distress claim against Racine Police Officer John Doe 1, Caledonia Police Officer John Doe 2, and Officer with Badge Number DA1263; and

**Count Seven**: state-law negligence claims against Racine Police Officer John Doe 1, Caledonia Police Officer John Doe 2, and Officer with Badge Number DA1263 for seizing/arresting Plaintiff without a lawful basis to do so and/or in how they physically handled him during his seizure or arrest.

Plaintiff's Fourth and Fourteenth Amendment claims that he was forced to disrobe and to drink contaminated water during his period of detention at the Racine County Jail are improperly joined to this lawsuit, and accordingly these claims are dismissed without prejudice. Plaintiff is not permitted to proceed on any First Amendment or state-law kidnapping or abduction claims.

Because Plaintiff does not know the identities of the three Defendant Officers, the court will add Racine Chief of Police Alexander Ramirez ("Chief Ramirez") and Caledonia Chief of Police Christopher M. Botsch

("Chief Botsch") as Defendants for the limited purpose of helping Plaintiff identify the names of the three Defendant Officers. *See Donald v. Cook County Sheriff's Dept.*, 95 F.3d 548, 556 (7th Cir. 1996). Because Plaintiff has been permitted to proceed in forma pauperis, the Court will order the U.S. Marshals to serve Chief Ramirez and Chief Botsch with Plaintiff's amended complaint and a copy of this Order. Fed. R. Civ. P. 4(c)(3). Chief Ramirez and Chief Botsch do not have to file a responsive pleading to the amended complaint.

After lawyers have appeared for Chief Ramirez and Chief Botsch, Plaintiff may serve discovery requests upon Chief Ramirez and Chief Botsch to get information that will help him identify the names of the Defendant Officers. Plaintiff may do so by mailing his discovery requests to Chief Ramirez's and Chief Botsch's attorneys at the addresses in their notices of appearance. For example, Plaintiff may serve interrogatories (written questions) under Federal Rule of Civil Procedure 33 or document requests under Federal Rule of Civil Procedure 34. Plaintiff's discovery requests must be limited to information or documents that will help him learn the real names of the Defendant Officers. Chief Ramirez and Chief Botsch are under no obligation to respond to requests about any other topic. Likewise, Plaintiff may not ask Chief Ramirez or Chief Botsch about any claim on which or party against whom he has not been permitted to proceed, as stated in this Order.

After Plaintiff learns the real names of the Defendant Officers, he must file a motion to substitute their names for the John Doe placeholders. Plaintiff must complete this portion of discovery and file a substitution motion within **sixty (60) days** of Chief Ramirez and Chief Botsch's attorneys appearing. The Court will dismiss Chief Ramirez and Chief Botsch as Defendants once Plaintiff files the motion and identifies the

Defendant Officers' names. If Plaintiff does not complete this task within the time allotted, or does not explain to the Court why he is unable to do so, the Court may dismiss his case based on his failure to diligently pursue it. Civil L. R. 41(c).

Once Plaintiff files his substitution motion, the Court will issue further instructions including setting a schedule for responsive pleadings and dispositive motions. At that point, Plaintiff may serve further discovery requests to get the information he believes he needs to prove his claims.

Accordingly,

**IT IS ORDERED** that Plaintiff Robert Carradine's motion for leave to proceed without prepayment of the filing fee, ECF No. 2, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff's Fourth and Fourteenth Amendment claims that he was forced to disrobe and to drink contaminated water during his period of detention at the Racine County Jail, as asserted in the amended complaint, ECF No. 6, are improperly joined to this lawsuit, and accordingly are **DISMISSED without prejudice**;

**IT IS FURTHER ORDERED** that the Clerk of Court **TERMINATE** the Racine Police Department, Caledonia Police Department, and Racine Sheriff's Office as Defendants; **ADD** Racine Police Officer John Doe 1, Caledonia Police Officer John Doe 2, and Officer with Badge Number DA1263 as placeholder Defendants; and **ADD** Racine Chief of Police Alexander Ramirez and Caledonia Chief of Police Christopher M. Botsch as Defendants for the limited purpose of identifying the placeholder Defendants;

**IT IS FURTHER ORDERED** that that the U.S. Marshals Service shall serve a copy of the amended complaint, ECF No. 6, and this screening order, ECF No. 7, upon Defendants Racine Chief of Police Alexander

Ramirez and Caledonia Chief of Police Christopher M. Botsch, pursuant to Federal Rule of Civil Procedure 4. Plaintiff Robert Carradine is advised that Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. § 1921(a). Although Congress requires the Court to order service by the U.S. Marshals Service, it has not made any provision for these fees to be waived either by the Court or by the U.S. Marshals Service. The current fee for waiver-of-service packages is $8.00 per item mailed; for process served personally by the U.S. Marshals Service, the fee is $65.00 per hour. The full fee schedule is provided at 28 C.F.R. §§ 0.114(a)(2), (a)(3). The U.S. Marshals Service will give Plaintiff information on how to remit payment. The Court is not involved in collection of the fee; and

IT IS FURTHER ORDERED that Plaintiff file a substitution motion identifying the real names of Racine Police Officer John Doe 1, Caledonia Police Officer John Doe 2, and Officer with Badge Number DA1263 within **sixty (60) days** of Chief Ramirez and Chief Botsch's attorneys appearing; failure to do so within the time allotted will result in the dismissal of the case for failure to prosecute.

Dated at Milwaukee, Wisconsin, this 4th day of September, 2024.

BY THE COURT:

J. P. Stadtmueller
U.S. District Judge

Plaintiff will be required to submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

**<u>DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS</u>**. If mail is received directly to the Court's chambers, **<u>IT WILL BE RETURNED TO SENDER AND WILL NOT BE FILED IN THE CASE</u>**.

Plaintiff is further advised that failure to timely file any brief, motion, response, or reply may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. **<u>IF PLAINTIFF FAILS TO PROVIDE AN UPDATED ADDRESS TO THE COURT AND MAIL IS RETURNED TO THE COURT AS UNDELIVERABLE, THE COURT WILL DISMISS THIS ACTION WITHOUT PREJUDICE</u>**.